UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BRACCO DIAGNOSTICS, INC.,** | : | Civil Action No. 03-6025 (FLW) |
| **Plaintiff,** | : | |
| v. | : | **OPINION and ORDER ON** |
| | : | **INFORMAL MOTION** |
| **AMERSHAM HEALTH INC., et al.,** | : | |
| **Defendants.** | : | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon informal motion of Plaintiff Bracco Diagnostics, Inc. (hereinafter "Bracco") to compel production of 1) documents concerning a sales and marketing audit performed by a third party and 2) communications between Defendants Amersham Health Inc., et al., (hereinafter "Amersham") and its expert. The documents in dispute have been provided to the court for *in camera* review. No oral argument was held pursuant to Fed. R. Civ. P. 78. For the foregoing reasons, Bracco's Motion to Compel production of documents concerning a sales and marketing audit performed by a third party shall be DENIED and the Motion to Compel production of communications between Amersham and its expert shall be DENIED.

**I.     BACKGROUND**

The facts and procedural history of this matter are extensive and will not be repeated here at length. Presently before the Court is a Motion by Bracco to compel production of a sales and marketing audit performed by PricewaterhouseCoopers for Amersham (hereinafter "PWC report"). Amersham asserts that PriceWaterhouseCoopers was hired on behalf of Amersham's in-house counsel, to conduct "a review or assessment of certain of Amersham's sales and marketing practices

[as] part of a compliance program designed to ensure that Amersham's practices were in accordance with the many law and regulations that concern the marketing and sales of prescription pharmaceuticals." Declaration of Jeffrey Freedman in Opposition to Bracco's Motion to Compel (hereinafter "Decl. of Jeffrey Freedman") at ¶ 3. Bracco claims that this audit did not concern or contain legal advice, privileged information, trial preparation information or information otherwise immune from discovery. July 19, 2006 Letter Brief in Support of Bracco's Informal Motion to Compel (hereinafter "Moving Brief") at 2. However, in their August 3, 2006 Reply Letter Brief in Further Support of Bracco's Informal Motion to Compel (hereinafter "Reply Brief"), Bracco stipulated that the "real purposes of this analysis were ... to meet government regulatory requirements ..." Reply Brief at 6.

Amersham claims that the PWC report is protected by the attorney client privilege, the work product immunity doctrine, and the self critical analysis privilege. See Amersham's July 28, 2006 Letter Brief in Opposition to Bracco's Informal Motion to Compel (hereinafter "Opposition Brief"). Bracco claims that none of these protections apply and the PWC report should be produced.

Bracco also moves for the production of "communications with Amersham's testifying expert." Moving Brief at 1. Amersham claims that the communication was between its expert, Dr. Schmid, and litigation counsel, and is therefore protected under the work product immunity doctrine. Opposition Brief at 5. Bracco asserts that the work product immunity doctrine is wholly inapplicable. Reply Brief at 7-8.

The PWC report and subject communication from Dr. Schmid to litigation counsel were submitted to the Court for *in camera* review.

2

**II.     ANALYSIS**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal courts and provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."  Thus, Rule 26(b)(1) has been interpreted quite liberally, providing "a broad vista for discovery [which would] . . . 'encompass any matter that reasonably bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  Tele-Radio Sys. Ltd. v. DeForest Elec., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  While not defined in the Rules, "privileged" is "generally understood to refer to those evidentiary privileges applicable at trial."  Robinson v. Magovern, 83 F.R.D. 79, 84 (W.D. Pa. 1979); see also Martin v. Lamb, 122 F.R.D. 143, 145 (W.D.N.Y. 1988). Federal Rule of Evidence 501 sets forth the general rule with respect to the application of privileges in both federal question and diversity cases.  It provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law.

Hence, except in those situations governed by the second sentence of Rule 501, federal privilege law generally applies to federal question cases.  See Gannet v. First Nat'l State Bank of New Jersey, 546 F.2d 1072, 1076 (3d Cir. 1976), cert. denied, 431 U.S. 954 (1977).  In federal questions cases that include pendant state law claims, "the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule."  Wm. T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100,

104 (3d Cir. 1982); Wei v. Bodner, 127 F.R.D. 91, 94 (D.N.J. 1989); see also Hancock v. Hobbs, 967 F.2d 462, 466-67 (11th Cir. 1992). The Court also notes that neither party disputes that federal common law controls the allegations of privilege applicable here.

    A.       Production of the PWC report

Amersham claims that the PWC report is protected by the self critical analysis privilege, attorney client privilege, and work product immunity. Because the Court has determined that the PWC report is protected under the self critical analysis privilege, the Court will not address Amersham's assertions of attorney client privilege and work product immunity.      i. Self Critical Analysis Privilege

The self critical analysis privilege, or self evaluative privilege, has been recognized in a broad variety of cases in this District, in which the privilege is "essential to the free flow of information and ... the free flow of information is essential to promote recognized public interests." Harding v. Dana Trans., Inc., 914 F. Supp. 1084 (D.N.J. 1996)(citing Note, The Privilege of Self-Critical Analysis, 96 HARV. L. REV. 1083, 1087 (1983)). The privilege originated in Bredice v. Doctors Hospital, Inc., and was created to foster self-evaluation and the benefits derived therefrom. 50 F.R.D. 249, 250 (D.D.C. 1970), aff'd 479 F.2d 920 (D.C. Cir. 1973). The Bredice court recognized that "[c]andid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care...," and that "constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit." Id. "The value of self critical evaluations would be destroyed if not shielded from the discovery process." Brunt v. Hunterdon Cty., 183 F.R.D. 181, 185 (D.N.J. 1998)(citing Bredice, 50 F.R.D. at 250).

Although the privilege has been recognized in a broad range of cases, neither the United States Supreme Court nor the Third Circuit Court of Appeals have addressed the existence of a self-critical analysis privilege. However, "a federal court may resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled." Brunt, 183 F.R.D. at 185 (quoting Spencer Savings Bank, SLA v. Excell Mortgage Corp., 960 F. Supp. 835, 836 (D.N.J. 1997) (internal quotations omitted). Moreover, "[b]ecause the United States Supreme Court has cautioned federal courts against expanding federal privileges, ... rather than adopting a 'full fledged privilege', a case by case balancing approach is sufficient to address self critical analysis concerns." Id. at 186.

When analyzing whether the self critical analysis privilege is applicable, a court must balance (1) whether the information is the result of a self critical analysis undertaken by the party seeking protection, (2) the extent to which the information is available from other sources, (3) the degree of harm the litigant will suffer from the information's unavailability, (4) the possible prejudice to the party asserting the privilege, (5) the public interest in preserving the free flow of the type of information sought, and (6) whether the information is of the type whose flow would be curtailed if discovery were allowed. U.S. v. Hackensack Univ. Med. Ctr., 2003 U.S. Dist. LEXIS 15225 at * 6-7 (D.N.J. August 13, 2003)(citing Brunt, 183 F.R.D.181).

*1. Is the PWC report the result of a Self Critical Analysis*

To determine whether a report or document is the result of a self critical analysis, the Court must look at whether "(1) the material sought has been prepared for mandatory government reports or for a critical-self analysis" and (2) the privilege is being "extend[ed] only to subjective, evaluative materials, not to objective data." Kopacz v. Delaware River and Bay Auth., 225 F.R.D. 494, 497

(D.N.J. 2004)(citing Melhorn v. N.J. Transit Rail Operations, Inc., 2001 WL 516108 (E.D. Pa. May 15, 2001)). The parties do not dispute that the contents of the report are subjective and evaluative in nature.  However, Bracco argues that the "application of [the self critical analysis privilege] is generally limited to the context of hospital committee reports and equal opportunity forms submitted to the government, and thus is completely inapplicable here."  Reply Brief at 5-6.  This Court disagrees.  In fact, the self critical analysis privilege has been extended to numerous areas besides medical care. See Bradley v. Melroe Co., 141 F.R.D. 1 (D.D.C.1992)(products liability); In re Crazy Eddie Securities Litigation, 792 F. Supp. 197 (E.D.N.Y.1992)(securities law); Granger v. Nat'l R.R. Corp., 116 F.R.D. 507 (E.D.Pa.1987)(railroad accident investigations); Lasky v. American Broadcasting Cos., Inc., 5 Fed. R. Serv. 3d 1366 (S.D.N.Y. 1986)(self-evaluative privilege exists in cases of violations of securities law, medical malpractice, violations of civil rights and libel); New York Stock Exchange v. Sloan, 22 Fed. R. Serv. 2d 500 (S.D.N.Y.1976)(accounting records); Keyes v. Lenoir Rhyne College, 552 F.2d 579 (4th Cir. 1977), cert. denied, 434 U.S. 904 (1977) (academic peer reviews); Lloyd v. Cessna Aircraft Co., 74 F.R.D. 518 (E.D.Tenn.1977)(product safety assessments); Banks v. Lockheed-Georgia Co., 53 F.R.D. 283 (N.D.Ga.1971)(a defense contractor's confidential assessment of its equal employment opportunity practices).

     The genesis of the law has created a rule where the "materials protected [by the self critical analysis privilege] have generally been those prepared for *mandatory government reports*." Harding, 914 F. Supp. at 1100 (emphasis in original).  Amersham asserts that PricewaterhouseCoopers was hired on behalf of Amersham's in house counsel, to conduct "a review or assessment of certain of Amersham's sales and marketing practices [as] part of a compliance program designed to ensure that Amersham's practices were in accordance with the many law[s] and regulations that concern the

6

marketing and sales of prescription pharmaceuticals." Decl. of Jeffrey Freedman at ¶ 3. In other words, the PWC report was created to "assist counsel in advising the company on its compliance program in order to *best comply with the many laws and regulations* that concern the sales of prescription pharmaceuticals." Opposition Brief at 2 (emphasis added). Moreover, Bracco recognizes that the real purpose of the PWC report was "to meet government regulatory requirements" Reply Brief at 6. The Court is therefore satisfied that the PWC report was prepared to ensure compliance with governmental regulations and for a self critical analysis, and therefore the Court looks to the second prong of the Hackensack analysis.

### 2. Alternate Source

The second prong of the balancing test looks to whether the subject information is available from an alternate source. Availability of an alternate or less-intrusive source has often been part of judicially developed balancing tests that weigh whether a privilege should apply or should be pierced. See In re Kozlov, 79 N.J. 232, 244 (1979) ("[T]here are necessary foundations to the valid piercing of any such privilege ... But it must also be shown ... [that] the information ... [c]ould not be secured from any less intrusive source.")(emphasis added).

In the instant matter, Amersham does not directly address whether the information contained in the PWC report is available from other sources. Bracco clearly states that "the report is not more easily available elsewhere." Reply Brief at 6. However, it is important to note that the PWC report contains subjective analysis and the "underlying information on which the report was based was available to Bracco in discovery." Opposition Brief at 4. Nevertheless, there is no alternate source for the analysis contained in the PWC report and therefore, this factor leans in favor of production.

### 3 and 4. Prejudice to Bracco versus Prejudice to Amersham

The third and fourth parts of the balancing test look to whether either party would be prejudiced from the information's unavailability or disclosure. See Hackensack, 2003 U.S. Dist. LEXIS at * 7.  As can be expected, Bracco claims that it will be "seriously harmed by not obtaining the results of the audit," while Amersham argues that it "would likely be dissuaded from repeating such an investigation if the results could be used against it in litigation." See Reply Brief at 6; Opposition Brief at 4.

Amersham responds to Bracco's claim of prejudice by asserting that the information contained in the report is "marginally relevant (at best) to Bracco's claims." Opposition Brief at 4. Whereas, Bracco contends that the PWC report relates to Bracco's precise claims at issue in this litigation.  Id.   Bracco also asserts,  in response to Amersham's claim of prejudice, that "[p]harmaceutical companies, as a matter of good routine, [and] good business practice, must constantly "self analyze" their practices[,] regardless of whether their practices become public, in order to act in compliance with various regulations, maintain their reputation, ensure patient safety and remain in business." Reply Brief at 6.  On balance, the Court finds that Amersham would be prejudiced to a greater degree  from disclosure of the information than Bracco would suffer from non-disclosure.

Amersham  instituted an internal review following several complaints regarding marketing from Bracco.  Opposition Brief at 1.  This review resulted in the creation of the PWC report as part of an internal "compliance program designed to ensure that Amersham's practices were in accordance with the many laws and regulations that concern the marketing and sales practices of prescription pharmaceuticals." Decl. of Jeffrey Freedman at ¶ 3.  The internal compliance program was initiated "in contemplation of possible future claims or litigation involving such matters."  Id.

Although Bracco speculates that the findings of the PWC report relate to its precise claims, they concede that they already have access to all of the factual information that forms the basis of the PWC report. Opposition Brief at 4. Cf. Kopacz v. Delaware River and Bay Auth., 225 F.R.D. at 497 (holding that the self critical analysis privilege does not apply to factual or objective data). Moreover, Bracco's experts, including John S. Russell, had access to this factual information while rendering their expert opinions. See generally Decl. of John S. Russell at ¶¶ 1, 18-19; Opposition Brief at 4. While the Court recognizes that the availability of the factual documents does not wholly mitigate the prejudice to Bracco from non-production, it finds that because Bracco has access to the factual information underlying the PWC report, it would suffer less prejudice from non-production than Amersham would suffer from production. Thus, after balancing the prejudice to each party, these factors weigh in favor of Amersham.

### 5. *Public interest in flow of information*

The Court now turns to the "public interest in preserving the free flow of the type of information sought." See Hackensack, 2003 U.S. Dist. LEXIS at * 8-9. The information sought in the PWC report can be characterized as an independent review of Amersham's internal compliance program "in order to best comply with the many laws and regulations that concern the sales of prescription pharmaceuticals." Opposition Brief at 2. Amersham claims that "public interest supports encouraging companies to undertake efforts of this type." Id. at 4. Bracco responds that "there is clearly a strong public interest in not allowing a pharmaceutical company to hide the results of investigations that show that it has willfully made false and misleading claims concerning the safety of its products to physicians, thereby compromising patient safety." Reply Brief at 6. After undertaking an *in camera* review, the Court finds that the PWC report was not the result of an

9

"investigation", but rather was an internal check, prompted by complaints, to ensure Amersham's compliance with all requisite law and regulations. Thus, the Court must determine what, if any, public interest exists in maintaining the free flow of information such as the PWC report.

Many courts have analogized the public's interest in maintaining the free flow of information of this type and invocation of the self critical analysis privilege to Fed. R. Evid. 407, more commonly known as the subsequent remedial measures rule. The rule provides, that when measures are taken after an event which would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence at the event. Fed R. Evid. 407. Although the self critical analysis privilege should be analyzed under the evidentiary standards of Rule 407, Accord Granberry v. Jet Blue Airways, 228 F.R.D. 647, 651 n.2 (N.D. Cal. 2005); Stalling v. Union Pac. R.R. Co., 2003 WL 21317297 at *10-11 (N.D. Ill. June 6, 2003); Cf. Capellupo v. FMC Corp., 1988 WL 41398 at *6 (D. Minn. May 3, 1998)(utilizing Rule 407 analysis to determine that self critical analysis privilege did not apply), the public policy considerations underlying Fed. R. Evid. 407 are analogous to those underlying the development of the self-critical privilege analysis in this District and therefore worthy of discussion.

The public policy underlying Rule 407 was articulated by the Third Circuit Court of Appeals in Petree v. Victor Fluid Power, Inc., 831 F.2d 1191. Rule 407 is supported by "the social policy of encouraging people to take or at least not discourage them from taking, steps in furtherance of added safety." Petree, 831 F.2d at 1198 (citing Notes on Advisory Committee on Proposed Rules). This is similar to the "policies underlying the self critical analysis doctrine [which] are based upon the need to promote candid and forthright self-evaluation." Granger v. National R.R. Passenger Corp., 116 F.R.D. 507, 509 (E.D. Pa. 1987). "The privilege protects an organization or individual from the

Hobson's choice of aggressively investigating accidents or possible regulatory violations, ascertaining the causes and results, and correcting the violations or dangerous conditions, but thereby creating a self-incriminating record that may be evidence of liability, or deliberately avoiding making a record on the subject (and possibly leaving the public exposed to danger) in order to lessen the risk of civil liability." Reichhold Chemicals, Inc. v. Textron, Inc., 157 F.R.D. 522, 524 (N.D. Fl. 1994).

Other jurisdictions have also recognized the public policy link between the self critical analysis privilege and Rule 407. See Reichhold Chemicals, Inc., 157 F.R.D. at 524 ("The self-critical analysis privilege is analogous to, and based on the same public policy considerations of Rule 407, Federal Rules of Evidence, which excludes evidence of subsequent remedial measures."); Capellupo v. FMC Corp., 1988 WL 41398 at *6 (D. Minn. May 3, 1998)(The self critical analysis privilege "is perhaps most closely related to the philosophy of Rule 407 "); Martin v. Potomac Elec. Power Co., 1990 WL 158787 (D. D.C. May 25, 1990)(comparing Rule 407 with the public policy reasons behind the development of the self critical analysis privilege). Reid v. Lockheed Martin Aeronautics Co., 199 F.R.D. 379 n.2 (N.D. Ga. 2001)(the self critical analysis privilege rests on many of the same policy considerations as does the exclusion of subsequent remedial measures).

Thus, the Court finds that it is in the public interest for organizations, when faced with a possible violation of law or government regulation intended to protect the public, to attempt to expeditiously determine the causes and results, and correct them accordingly. The flow of information of this type is crucial to protection of the public-at-large from so-called 'breakdowns in the system'.

In the instant matter, the PWC report was created as a result of Bracco's complaints regarding Amersham's sales and marketing practices related to prescription pharmaceutical products.

11

Opposition Brief at 1. The parties do not dispute that the sale and marketing of prescription pharmaceuticals is something regulated by the government for the public interest. See Food and Drug Administration's Mission Statement http://www.fda.gov/opacom/morechoices/mission.html (last visited October 10, 2006)(stating that "The FDA is responsible for protecting the public health by assuring the safety, efficacy, and security of human ... drugs, biological products, medical devices ... [and] is also responsible for advancing the public health by helping to speed innovations that make medicines and foods more effective, safer, and more affordable; and helping the public get the accurate, science-based information they need to use medicines and foods to improve their health."); See also 21 U.S.C. §§ 355(a) et. seq. (Federal Food, Drug and Cosmetic Act outlining the Food and Drug Administration's regulatory authority). Amersham, through in house counsel Jeffrey Freedman, Esq., reacted to Bracco's complaints by engaging PricewaterhouseCoopers to help advise the company "in order to best comply with the many laws and regulations that concern the sales of prescription pharmaceuticals." Opposition Brief at 2. PricewaterhouseCoopers collected, analyzed and synthesized the requisite information and issued a subjective analysis of Amersham's sales and marketing practices, which has been dubbed the PWC report.[1] The Court views the report as a "step in furtherance of added safety." Petree, 831 F. 2d at 1198. Therefore, the Court finds that subjective analysis included in the PWC report is the type of information whose free flow is in the public interest. Thus the fifth prong of the Hackensack test is resolved in favor of Amersham.

### 6. Curtailing of flow of information

The Court finally looks to whether the information is of the type whose flow would be

---

[1] The Court notes that it has not made any findings regarding what conclusions were reached in the PWC report, nor whether the PWC report was utilized in any way by Amersham.

curtailed if discovery were allowed. See Hackensack, 2003 U.S. Dist. LEXIS at 9. The Court has recognized that the purpose of the self critical analysis privilege includes avoiding "the chilling effect upon such self analysis which would result from complete disclosure." Todd v. South Jersey Hosp. Sys., 152 F.R.D. 676, 682 (D.N.J. 1993). As previously mentioned, the Court finds that there is a substantial likelihood that the flow of the information at issue would be curtailed if discovery is allowed. Bracco argues that for the same reasons mentioned under the fifth factor above, "the information is not of a scope whose flow would be curtailed if discovery were allowed." Reply Brief at 6. However, the Court has already distinguished Bracco's broad assertions from the instant set of facts. Allowing discovery would perpetuate a chilling effect, and create the Hobson's choice discussed in Reichhold Chemicals, 157 F.R.D. at 524, where an organization would expose itself to civil liability if they choose to investigate and correct violations or dangerous conditions. Therefore the Court finds that the sixth factor of the Hackensack test balances in Amersham's favor.

      ii. Application of Balancing Test

After applying the factors outlined in Hackensack, the Court finds that the PWC report is protected by the self critical analysis privilege. The Court has found that the privilege is applicable to the PWC report, that Amersham would suffer more prejudice from the reports release than Bracco would face from non-production, and that there are extremely strong public interests in protecting the free flow of information of this type, and ensuring that the flow of the information is not curtailed. Therefore, Bracco's informal Motion to Compel production of the PWC report is denied.

    B.    Correspondence from Dr. Schmid

Bracco has also requested that Amersham be compelled to produce a communication between

Amersham and one of Amersham's testifying experts, Dr. Christopher Schmid (hereinafter "Schmid"). Moving Brief at 3. Bracco asserts that under Fed. R. Civ. P. 26(a)(2)(B), "a party must disclose all information provided to its testifying expert for consideration in the expert's report, including information protected by the attorney-client privilege or the work product privilege." Synthes Spine Co. v. Walden, 232 F.R.D. 460, 464 (E.D. Pa. 2005). Amersham argues that the communication to Schmid is protected by the work product doctrine. Opposition Brief at 5. Amersham also asserts that prior to these communications, the parties had stipulated "that neither side would seek drafts of expert reports or communications with experts concerning preparation of expert reports, including documents exchanged between counsel and experts." Opposition Brief at 4 n.2.

### 1. Work Product Doctrine

The work product privilege is uniformly governed by Fed. R. Civ. P. 26(b)(3) in both federal question and diversity cases. United Coal Cos. v. Powell Construction Co., 839 F.2d 958, 966 (3d Cir. 1988). Fed. R. Civ. P. 26(b)(3) states, in part, that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). To overcome the work product doctrine, a party must demonstrate "a substantial need of the materials in preparation of that party's case." Id. The party must also make a showing of "undue hardship to obtain the substantial equivalent of the materials by other means." Id. "Even if those requirements are met, the court will still withhold documents that would disclose mental impressions, conclusions or legal theories of an attorney or other representative of a party concerning a lawsuit." Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C., 57 Fed. Appx. 58, 60 (3d Cir. 2003)(citing Fed. R. Civ. P.

14

26(b)(3))(internal quotations omitted). Rule 26(b)(3) also "provides work product protection independently of Rule 26(b)(4)(B)." In re Cendant Corp. Securities Litig., 343 F.3d 658, 664-65 (3d Cir. 2003).

After conducting an *in camera* review of the correspondence, the Court finds that Dr. Schmid did not review, reflect upon, read, or use this communication in formulating his conclusions regarding Dr. Solomon's work. The Court also confirms that the correspondence contains information sent from Dr. Schmid to litigation counsel. This Court determines that this correspondence is protected by the work product doctrine. Bracco's Informal Motion to Compel the correspondence from Dr. Schmid is therefore denied.

### III. CONCLUSION and ORDER

For the aforementioned reasons and for good cause shown,

IT IS on this 13th day of October, 2006,

ORDERED that Bracco's Informal Motion to Compel discovery of the PWC Report is DENIED as the PWC Report is protected by the self-critical analysis privilege; and it is further

ORDERED that Bracco's Informal Motion to Compel discovery of a communication between Dr. Schmid and litigation counsel is DENIED as the communication is protected under the work product doctrine.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**