# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRACCO DIAGNOSTICS, INC., | : | Civil Action No. 03-6025 (FLW) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : | **TO SEAL** |
|  | : |  |
| AMERSHAM HEALTH INC., et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

BONGIOVANNI, Magistrate Judge

Currently before the Court are seventy-five Motions to Seal pursuant to L.Civ.R. 5.3 filed by Plaintiff Bracco Diagnostics, Inc. ("Bracco") and Defendants Amersham Health, Inc., et al. ("Amersham"). The Court has determined that the issuance of an omnibus opinion would expedite adjudication of each motion, and serve the interest of judicial economy. Oral argument was held on March 7, 2007 regarding Amersham's Motion to Seal the Final Pretrial Order [Docket Entry No. 193]. A supplemental oral argument was held on June 14, 2007 regarding all 75 outstanding sealing motions [Docket Entry No. 486]. For the following reasons the Motions are GRANTED in part and DENIED in part.

## I. Background

The claims and history of this protracted litigation are extraordinarily familiar to the parties and Court, and shall not be repeated here at length. The underlying claims relate to disputes between the parties of improper advertising, sales, and marketing practices of x-ray contrast agents, specifically Bracco's product Isovue, and Amersham's products Omnipaque and Visipaque. This matter was instituted on December 16, 2003 and a bench trial began on May 7, 2007, before the Honorable Freda L. Wolfson, U.S.D.J. [See Docket Entry Nos. 481- 485].

In anticipation of trial, beginning on March 2, 2007, the parties began to file Motions for Summary Judgment, Motions *In Limine* and *Daubert* Motions.  In conjunction with these Motions the parties filed one Motion to Seal with each brief packet submitted to the Court.  The result of this futile exercise was 299 separate filings by the parties on the docket, not to mention the numerous quality control messages, deadlines and remarks entered by the Court. See Docket Entry Nos. 177 - 475.  Ironically, every document filed by both parties, other than the Motions to Seal, were improperly filed with redacted text.[1]

On April 18, 2007, an in person conference was held before the Honorable Freda L. Wolfson, U.S.D.J., to discuss the numerous motions and other pretrial matters.  The parties were instructed to meet and confer and submit a narrower list of items which they believe should be sealed from public access.  After receiving permission from the Court, both Bracco and Amersham submitted separate revised lists on May 1, 2007 (hereinafter respectively "Bracco Application" and "Amersham Application"). Bracco also submitted an opposition to Amersham's Application on May 2, 2007 ("Bracco Opposition").

On June 14, 2007, the Court conducted a telephone conference with the parties during a break in trial to reassess the parties' views on the pending motions.  The Court inquired whether the parties had reconsidered or refined the documents they sought to seal due to the open nature of trial.  In archetypical fashion, both parties reaffirmed that their respective positions had not changed, and that they would not be able to agree upon an amicable resolution to these Motions.

---

[1] The inconvenient truth of the matter is that the parties also sent at least 25 bankers boxes of documents containing redacted and unredacted "courtesy copies" to the Court, and a standard printout of the docket sheet is now 84 pages long.  This nugatory exercise, which could have been avoided with one simple call to the Court for guidance, resulted in a tremendous waste of resources.

**II. Analysis**

    A.  Sealing Materials pursuant to Local Civil Rule 5.3

> "Every Inhabitant of the Countrie shall have free libertie to search and
> veewe any Rooles, Records, or Regesters of any Court..."

The Massachusetts Body of Liberties at Article 48 (1641).  The concept of public access to Court

records has existed on this continent over 100 years prior to the signing of the Declaration of

Independence.  Following the adoption of the Bill of Rights there were well established common law

and First Amendment based rights of the public of access to certain government controlled

documents including materials filed with or held by the courts.  See generally Nixon v. Warner

Commc'ns, 435 U.S. 589, 597 (1978).  In the courts of the State of New Jersey, a non-party's right

to inspect public documents has been recognized since at least 1879.  State ex. rel. Ferry v. Williams,

41 N.J.L. 332 (N.J. Sup. Ct. 1879) ("The documents in question are of a public nature, and the rule

is that every person is entitled to the inspection of such instruments, provided he shows the requisite

interest" which includes representing a "public or common right").  The Third Circuit also has a long

tradition of recognizing a common law right of public access to judicial proceedings and records.

See United States v. Crisden, 648 F.2d 814, 819 (3d Cir. 1981); Publicker Industries, Inc. v. Cohen,

733 F.2d 1059, 1066 (3d Cir. 1984); Littlejohn v. Bic Corp., 851 F.2d 673, 678 (3d Cir. 1988);

Lecaudia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir. 1993); In re Cendant

Corp., 260 F.3d 183, 192 (3d Cir. 2001).

    Over time this doctrine has evolved into "a presumptive right of public access to pretrial

motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in

connection therewith." Leucadia, 998 F.2d at 164.  The public's right of access is "not absolute" and

3

must be weighed against the litigants interest in secrecy. Id. at 165.  In re Cendant Corp., 260 F.3d

at 194. In fact, "[e]very court has supervisory power over its own records and files, and access has

been denied where court files might have become a vehicle for improper purposes."  In re Cendant

Corp., 260 F.3d at 194 (quoting Nixon, 435 U.S. at 598  (citing Schmedding v. May, 85 Mich. 1, 5-6

(1891) and Flexmir, Inc. v. Herman, 40 A.2d 799, 800 (N.J. Ch.1945) (courts deny access to filed

documents where they may be used as sources of business information that might harm a litigant's

competitive standing))).  Nevertheless, when the subject of the motion to seal is a discovery motion,

there is no presumptive right of public access.  Leucadia, 998 F.2d at 164-165 (raw discovery is

ordinarily inaccessible to the public, and therefore a motion precipitated by inadequate discovery

responses or aggressive discovery demands should not be presumptively accessible to the public).

The presumption of public access to non-discovery motions can be rebutted with a showing that

good cause exists for the protection of the subject materials.  In re Cendant Corp., 260 F.3d at 194;

See also Skinner v. Ashan, 2007 WL 708972 at *2 (D.N.J. March 2, 2007).  "Good cause exists

when a party makes a particularized showing that disclosure will cause a clearly defined and serious

injury to the party seeking closure."  Securimetrics, Inc. v. Iridian Techs., Inc., 2006 WL 827889 at

*2 (D.N.J. March 30, 2006)(internal quotations omitted).  In fact, to determine whether good cause

exists, a court should look to the factors outlined in this District's Local Civil Rule 5.3.  Id.; See

generally Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).

L.Civ.R. 5.3 was adopted to govern all requests by a party to seal or otherwise restrict public

access to materials filed with or used by the Court, and judicial proceedings themselves.  See Lite,

N.J. Federal Practice Rules, Comment 1 to L.Civ.R. 5.3 (Gann 2007).  The Rule was "intended to

reflect Supreme Court and Third Circuit law." See Explanatory Note to Local Civil Rule 5.3.

Although there is often confusion with the various routes a litigant may take to request that materials be sealed, the single constant is that any request to seal must be made by formal motion pursuant to L.Civ.R. 7.1.  See L.Civ.R. 5.3(c)(1).  As of March 9, 2007, a motion to seal must also include "[p]roposed findings of fact and conclusions of law ... with the motion papers in the proposed order."  See L.Civ.R. 5.3(c)(2).  The motion to seal must be available for public review and must describe the four factors outlined in the Rule.  L.Civ.R. 5.3(c)(2).  Prior to restricting public access, a court must determine: (1) the nature of the materials at issue, (2) the legitimate private or public interest which warrants sealing, (3) the clearly defined and serious injury that would result if the materials were not sealed, and (4) why any less restrictive alternative to sealing is not available.  L.Civ.R. 5.3(c).  See also Pansy, 23 F.3d 772.  By applying these factors, the Court must determine whether the moving party has established good cause to seal the materials from public access.

B.  Procedural defects

Parties are often unaware of the procedure they must follow when filing a motion to seal. See generally Mary Pat Gallagher, *Federal Court in N.J. Cracks Down on Wrongly Filed Sealing Motions*, 186 N.J.L.J. 879 ("Lawyers are improperly filing motions to seal...").  When a protective order is in place, such as the instant matter, the parties may file "[a]ny materials deemed confidential by a party or parties ... under the designation "confidential materials"...[under seal] until such time as the motion is decided."  L.Civ.R. 5.2(c)(3).  This section "is intended to allow confidential materials to be filed and remain under seal until a motion to seal or otherwise restrict public access is ruled on."  See Explanatory Note to Local Civil Rule 5.3(c)(3).  In cases where a protective order has not been entered, parties should follow the provisions of L.Civ.R. 5.3(c)(6), which allows for the entry of a temporary sealing order until a formal motion, filed pursuant to L.Civ.R. 7.1, can be

5

adjudicated by the court.  Parties are forewarned that if the motion to seal is denied this material would then be available to public access.  Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Assoc., 800 F.2d 339 (3d Cir. 1988); See also Lite, N.J. Federal Practice Rules, Comment 4 to L.Civ.R. 5.3 (Gann 2007).

In the instant matter the parties improperly filed every underlying Motion in a redacted format.  This is in direct contravention to the Court's Electronic Case Filing Policies and Procedures and the spirit of L.Civ.R. 5.3.  See D.N.J. Electronic Case Filing Policies and Procedures at §§ 2,11,18 (redaction of personal identifiers is permitted, however a reference list with all identifying information must be filed under sealed in conjunction with the redacted document).  Instead the parties should have filed each document that contained information designated as confidential under seal.[2]  The Court would then have an electronic record of each document in its original form in perpetuity.  Thereafter the Court would render a decision on each motion, and the Clerk of the Court would have either released the document for public access or retained the document under seal pursuant to the Court's direction.  However, in the instant matter, the parties attempted to make an end run around the Court's policies by submitting a multitude of redacted documents on the docket which axiomatically restricts public access to the portions the parties wished to have sealed, irrespective of the Court's decision.  The insidious process of filing redacted documents is wholly violative of the long established doctrine which states that documents filed with the Court are presumptively public in nature.  Nevertheless, the Court shall defer articulating an appropriate remedy to ensure that It retains a complete electronic record of this matter, without overburdening

---

[2] When uploading each .pdf file onto CM/ECF the parties should have clicked the "Seal" checkbox to prevent public accessibility to that document. See L.Civ.R. 5.3(c).

6

the Clerk of the Court.

C.  Sealing the Final Pretrial Order

Amersham filed a Motion to Seal the Final Pretrial Order ("FPTO"), which was opposed by Bracco (hereinafter "FPTO Moving Brief" and "FPTO Opposition Brief" respectively).  Docket Entry No. 163.  On March 7, 2007, the Court held a hearing advising the parties that their requests to seal were overbroad and providing the parties with an opportunity to supplement their positions. Docket Entry No. 261. On March 29, 2007, Amersham submitted their supplemental briefing which significantly reduced the information they sought to seal from public access ("FPTO Supplemental Brief"). Bracco opposes the sealing of any portions of the Final Pretrial Order.

The nature of the materials Amersham seeks to seal fall into three categories: (1) regulatory correspondence between Amersham and the Food and Drug Administration ("FDA"), (2) information from which profit margins could be deduced, and (3) specific financial information about Amersham customers. Amersham also specifically identified the pages and lines of the Final Pretrial Order that it asserts should be sealed.

a.  Regulatory Correspondence

Amersham seeks to seal any regulatory correspondence contained in the FPTO, specifically letters between Amersham and the FDA.  FPTO Supplemental Brief at 2.  Amersham further notes that this information is contained on pages 19 and 130 of the FPTO.  Id.  Specifically, Amersham states that the information it seeks to seal are Bracco's inaccurate characterizations of correspondence between Amersham and the FDA. Id.  Amersham also notes that "an inaccurate report of confidential regulatory matters is no more appropriate for public consumption than an accurate report." Id.

7

Amersham also argues that the Court had sealed this "sort of information" in the past, to wit, in Its Orders of July 14 and 25, 2005.  See Docket Entry Nos. 85 and 86.  Specifically, Amersham relies on the Court's ruling that "Amersham's interest in maintaining the confidentiality of the documents outweighs the public's interest in their release."  FPTO Supplemental Brief at 3. Amersham also asserts that the prior ruling is the "law of the case that should not be reexamined because no intervening changes in the law call into question the propriety of the ruling."  Id. at 4. Regardless of any prior rulings, the Court finds it prudent to evaluate the present application under the guidelines of L.Civ.R. 5.3.

After reviewing the pages of the FPTO for which the relief is sought, the Court finds that Amersham has adequately described the nature of the materials it seals to seek as Bracco characterizations of regulatory correspondence between Amersham and the FDA.  L.Civ.R. 5.3(c)(2)(a).

Amersham also maintains that its interest in maintaining the confidentiality of the documents outweighs the public's interest in their release.  FPTO Supplemental Brief at 3 (citing July 14, 2005 Order [Docket Entry No. 85]).  The Court notes that Its July 14, 2005 Order dealt with the designation of the FDA letters themselves under the Protective Order, and not whether Bracco's description of the FDA letters should be restricted from public access.  However, the Court finds that Amersham has a legitimate private interest in protecting non-public correspondence with the governmental agency primarily responsible for its regulation.  See L.Civ.R. 5.3(c)(2)(b).

Amersham further asserts that if the regulatory correspondence were released to the public it would face a serious competitive injury in the marketplace.  The Court notes that the FDA has yet to respond to Bracco's Freedom of Information Act ("FOIA") request regarding these documents.

The Court also notes that It is aware of Amersham's assertions that Bracco is improperly using the judicial process to gain access to confidential documents for use in its business.  The Court finds that It has discretion over the dissemination of documents in its control, and allowing Bracco to gain access to otherwise confidential documents would be antithetical to the purpose of L.Civ.R. 5.3.[3] Accord In re Cendant Corp., 260 F.3d at 194; See also Nixon, 435 U.S. at 598.  Therefore, the Court finds there is an adequate basis to rule that Amersham would face a serious injury if the regulatory documents were available for public access. The Court also finds *sua sponte* that there is no less restrictive alternative to sealing these portions from public access.

Thus, the Court finds that the regulatory correspondence referenced in the FPTO is sensitive information that shall remain under seal unless released to Bracco or the public by the FDA through a FOIA request.  The Court finds that Amersham has made an adequate showing under L.Civ.R. 5.3 to rebut the presumption of public access to this portion of the FPTO, and therefore Amersham's request to seal page 19 § 4 (1) and page 130 § 3 (1) of the FPTO is GRANTED.

b.  Cost and Profit information

Amersham also seeks to seal portions of the FPTO that contain cost and profit information. FPTO Supplemental Brief at 2.  Specifically, Amersham describes the sections as "(i) gross sales figures and (ii) Bracco's calculation of Amersham's profits earned on those sales."  Id.  Amersham also notes that "even Bracco has agreed that information on profit margin or manufacturing costs is highly sensitive and should remain sealed."  Id. at 2-3; See also March 7, 2007 Conference Call Tr. at 19:13-15. Thus the Court finds that Amersham has adequately described the nature of materials

---

[3] The Court notes that the sealing of these documents will be rendered moot if they are released to the public by the FDA pursuant to a FOIA request.

to be sealed.  L.Civ.R. 5.3(c)(2)(a).

Amersham asserts that it has a legitimate private interest in ensuring that cost and profit information is sealed. FPTO Supplemental Brief at 3.  Specifically, Amersham states that there is a "potential for competitive harm to Amersham from public disclosure." Id. at 3.  Therefore the Court will find that it is in the best interest of corporations to keep cost and profit information sealed from the public and their competitors, to ensure their competitiveness in the marketplace. Maintaining competitiveness is a legitimate private interest which warrants sealing. L.Civ.R. 5.3(c)(2)(b).

Amersham clearly describes that it would suffer serious injury "if Bracco or other competitors know Amersham's costs, [because] they can use that information to set their own prices to the detriment of Amersham, to customers in general, and to competition as a whole." FPTO Supplemental Brief at 4.  Amersham also notes that certain sales involve a sealed bidding process, which is indicative of the market pressure they face to keep their information confidential.  The Court finds that Amersham has adequately described a clearly defined and serious injury that would result if the materials were not sealed. L.Civ.R. 5.3(c)(2)(c).

Although Amersham fails to address whether any less restrictive alternative to sealing is not available, the Court *sua sponte* finds that no less restrictive alternative exists.  Commercially sensitive information, such as information from which profit margins can be deduced, and from which a litigant's market competitiveness may be harmed is often sealed from public access. Accord Faulman v. Security Mutual Financial, 2006 WL 1541059 at *1 (D.N.J. May 31, 2006).  Therefore the Court finds that there is no less restrictive alternative to sealing Amersham's cost and profit information. L.Civ.R. 5.3(c)(2)(d).

10

The Court finds that Amersham has adequately described the nature of the materials at issue, the legitimate private interest which warrants sealing, the clearly defined and serious injury that would result if the materials are not sealed.  Additionally, the Court has taken notice that there is no less restrictive alternative available.  Therefore, the Court finds that Amersham has established good cause to rebut the presumption of public access to these materials and its Motion to Seal cost and profit information in the FPTO is GRANTED.

c.  Specific Customer Information

Amersham's final application regarding the FPTO is for the sealing of specific customer information.  Amersham had identified this material as specific sales information for an identified customer.  FPTO Supplemental Brief at 3.  Amersham utilizes the same arguments for sealing the customer information as it asserted for sealing cost and profit information.  Specifically, Amersham states that it is important for them to keep customer sales information private to remain competitive in the marketplace, that allowing this information to be publicly available would harm their position in the market, and that they only seek to seal a minute amount of information, to which no less restrictive alternative is available.  Id. at 3-5.

After reviewing the customer sales information Amersham seeks to seal the Court finds that Amersham has adequately met its burden under L.Civ.R. 5.3(c)(2).  The Court finds that Amersham has described the nature of the materials at issue as customer sales information, the legitimate private commercial interest that warrants sealing, and the clearly defined and serious injury in the marketplace it would suffer if the information were not sealed.  The Court further finds that no less restrictive alternative to sealing exists, and therefore Amersham's Motion to Seal customer sales information in the FPTO is GRANTED.

11

D.  Bracco's Motions to Seal

In its revised application to the Court, Bracco has significantly narrowed its requests.  The nature of the materials Bracco seeks to seal are "the costs to manufacture Bracco's contrast agents, and the resulting per-unit profits that Bracco earns based on those manufacturing costs." Bracco Application at 1.  This information is disclosed in the expert reports of Bracco's damages expert, Mr. Malackowski, dated June 14, 2006 and July 17, 2006, as well as both parties' proposed pretrial findings of fact.  Id.  The Court finds that Bracco has adequately described the nature of the materials at issue.  L.Civ.R. 5.3(c)(2)(a).

In its original motions to seal this material Bracco asserts that the documents in question are marked confidential or highly confidential and contain commercially sensitive information which both parties have sought to protect.  Docket Entry No. 227, Motion to Seal at 3. Although this description does not adequately describe a legitimate private interest, during argument and conferences with the Court, Bracco has made clear that it is in the best interest of corporations to keep cost and profit information sealed from the public and their competitors, to ensure their competitiveness in the marketplace. Maintaining competitiveness is a legitimate private interest which warrants sealing. L.Civ.R. 5.3(c)(2)(b).

Bracco also asserts that if the relief sought is not granted it may suffer competitive injury. Docket Entry No. 227, Motion to Seal at 3.  The Court finds that if the cost and profit information were released Bracco could face serious injury in the marketplace with both competitors and customers.  Therefore the Court finds that there is a clearly defined and serious injury that may result if the information is not sealed.  L.Civ.R. 5.3(c)(2)(c).

Bracco further asserts that no less restrictive alternative is available because the release of

this information may result in competitive harm.  Docket Entry No. 227, Motion to Seal at 3.  The Court also notes that "trade secret[s] or other confidential research, development or commercial information" is often sealed to prevent a litigant's position in the marketplace.  <u>Faulman</u>, 2006 WL 1541059 at *1.  Therefore, the Court finds that there is no less restrictive alternative to sealing this information.  L.Civ.R. 5.3(c)(2)(d).

The Court finds that Bracco has adequately described the nature of the materials at issue, the legitimate private interest which warrants sealing, the clearly defined and serious injury that would result if the materials are not sealed and why no less restrictive alternative is not available. Therefore, the Court finds that Bracco has established good cause to rebut the presumption of public access to these materials and its Motions to Seal cost and profit information as outlined in its supplemental application is GRANTED.

E.  Amersham's Motions to Seal

In its revised application, Amersham outlines four categories of documents which it seeks to seal, to wit, (a) regulatory correspondence, (b) cost and profit information, (c) unpublished clinical studies and/or analyses and (d) third party production.  Amersham Application at 1-2.  As requested by the Court, Amersham included a spreadsheet outlining its position on the pending motions to seal. <u>Id.</u> at Ex. D.  However, Amersham's supplemental application to seal fails to include required descriptions of four categories under L.Civ.R. 5.3(c)(2).  In fact Amersham's Application in its entirety fails to mention L.Civ.R. 5.3.  Nevertheless, during the June 14, 2007, telephone conference, Amersham adequately "plugged the holes" in their written applications to the Court.  <u>See</u> Docket Entry No. 486.

a.  Regulatory Correspondence

Amersham seeks to seal any regulatory correspondence contained as attachments to their Motions, specifically letters between Amersham and the FDA, and any references thereto. Amersham Application at 1.  As discussed above, the Court has found that Amersham has adequately described the nature of the FDA letters, the legitimate private business interest in keeping the FDA letters sealed, the clearly defined and serious injury that could occur if the FDA letters were released, and why no less restrictive alternative exists to sealing.  The Court notes that Bracco vehemently opposed Amersham's request to seal the FDA letters.  In response Amersham asserts that Bracco's only motivation for requesting that these documents are made available to the public is to slander Amersham and mislead its customers.  Amersham Application at 2.  The Court finds that competitive use of documents obtained solely through the judicial process is improper, and therefore Amersham's requests to seal the FDA letters is GRANTED.  See In re Cendant, Corp., 260 F.3d at 194.  The Court also notes that if the FDA releases the subject letters for public access pursuant to a FOIA request, then the sealing of these items would be moot.

b.  Cost and Profit Information

Amersham also seeks to seal any documents that contain cost and profit information. Amersham Application at 2.  As mentioned above, Amersham  notes that "even Bracco has agreed that information on profit margin or manufacturing costs is highly sensitive and should remain sealed."  Id. at 2-3; See also March 7, 2007 Conference Call Tr. at 19:13-15.

During the June 14, 2007 conference Bracco asserted that only the costs of manufacturing goods should be sealed.  Amersham asserted that advertising expenditures should be sealed and that all sales to Consorta occur through a sealed bidding process. Amersham further argued that if

14

sensitive information regarding costs and profits were released, competitors could easily deduce profit margins and adjust their bids to win contracts. Amersham argued that allowing this information to be available publicly would weaken their competitive position in the marketplace. Again the Court refers to In re Cendant Corp. and Nixon, which clearly state that the Court has an inherent authority to deny public access to litigation documents where the use of those documents in a court proceeding may become a "vehicle for improper purposes." In re Cendant, 260 F.3d at 194. Therefore the Court finds that Amersham has met the four prongs of L.Civ.R. 5.3(c), and Amersham's request to seal cost and profit information is GRANTED.

c.  Unpublished Clinical Studies and Analyses

During the course of this litigation, the parties have exchanged voluminous amounts of discovery, including numerous published or unpublished clinical studies and a variety of analyses. Amersham has moved to have all of these documents sealed from public access. Specifically, Amersham asserts that "Bracco has made clear that it seeks to pick and choose information from unpublished/incomplete clinical studies and/or internal Amersham studies to falsely suggest that there are issues with Amersham's products." Amersham Application at 2. Amersham notes that this type of usage should not be permitted.

Bracco argues that the information which Amersham seeks to seal are neither trade secrets nor the types of information which courts will seal. Bracco Application at 4. Bracco asserts that Amersham's motivation to seal these documents is "merely to conceal embarrassing information" because the studies show that "[t]he advertised benefits of the [Amersham] products are based on false and misleading information, including the omission of key clinical study results." Id. Bracco further asserts that Amersham's requests should be denied because sealing of documents is not

15

allowed "where the purpose is merely to conceal embarrassing information." Id. (citing Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484 (3d Cir. 1995)).  Bracco also argues that the documents should be publicly available because Amersham "argues their products are superior to Bracco's products," that Amersham "withheld unfavorable clinical data and seeks to do that again at trial," and that "[s]electively sealing data relating to [Amersham's] very public superiority claims is not warranted and does a disservice to the public and the medical community." Bracco Application at 5 (citing Pichler v. Unite, 238 F.R.D. 405, 410-412 (E.D. Pa. 2006)).

Amersham asserts that all of the information they seek to seal under this category are internal analyses on products which are not intended for publication or dissemination. See June 14, 2007 Oral Argument.  Amersham notes that by law all of the subject studies are submitted annually to the FDA, but are kept confidential and are not releaseable through an FOIA request. Id.  Amersham further argues that even studies that are on track to be published must be sealed from public access because many Journals want to be the first to publicly produce the studies findings and will often reject manuscripts that have not been maintained confidentially. Id.  Amersham notes that Bracco may rely on its own experts' testimony, who have had unfettered access to the studies and underlying data. Id.  Amersham also argues that if the information is released to competitors they could pick and choose information and "put their own spin on it" for a competitive advantage. Id.

Bracco asserts that the focus should not be on the manuscripts themselves, but rather the underlying data that Amersham seeks to seal. Id.  Bracco further argues that the Court should be concerned with public safety and not some hypothetical thoughts of Bracco disclosing this information. Id.  Bracco also notes that Amersham has not met its burden under Local Rule 5.3.

The Court wholly disagrees with Bracco's assertions. Amersham has adequately described

the nature of the materials it seeks to seal as unpublished clinical studies and analyses. <u>See</u> L.Civ.R. 5.3(c)(2)(a).

The Court further finds that Amersham has articulated numerous legitimate private interests that warrant the relief sought. <u>See</u> L.Civ.R. 5.3(c)(2)(b). Specifically, the Court finds that the subject studies, analyses and underlying data would not be publicly available, but for the discovery process in this litigation, and that the materials are generally maintained as highly confidential by Amersham. Moreover, if Amersham seeks to submit any of the materials for publication in a journal, there is a possibility that their prior public availability, via this litigation, would diminish a journal's propensity to publish. The Court finds that Amersham has a legitimate private interest in maintaining its confidential internal studies and analyses under seal.

Amersham has also identified a clearly defined and serious injury that would result if the materials were not sealed. <u>See</u> L.Civ.R. 5.3(c)(2)(c). The Court finds that release of this information to the public, including Amersham's market competitors such as Bracco, could put Amersham at a competitive disadvantage. Specifically, the Court finds that Amersham has adequately asserted that the information contained in the subject materials could be manipulated or distorted by competitors for a business advantage. <u>Accord</u> <u>In re Cendant Corp.</u>, 260 F.3d at 194. Moroever, the Court finds that the possibility of a manuscript being rejected from consideration for publication by a journal because it is already publicly available is another clearly defined injury which warrants the relief sought. Thus, the Court finds that Amersham has made an adequate showing under L.Civ.R. 5.3(c)(2)(c).

Finally, the Court also finds that there is no less intrusive alternative to sealing the subject materials. <u>See</u> L.Civ.R. 5.3(c)(2). Therefore, the Court finds that Amersham has met its burden

under the four prongs of Local Rule 5.3 and its Motion to Seal the Unpublished Clinical Studies and Analyses is GRANTED.

                         d.  Third Party Production

The final category of documents that Amersham seeks to seal are documents produced by third parties such as Consorta, Mr. Wiswall and Dr. Harrison. The Court notes that neither Bracco nor Amersham have standing to seek sealing of third parties' documents, because they cannot certify an adequate basis for sealing under the prongs of L.Civ.R. 5.3. During oral argument on June 14, 2007 both parties agreed that third party document production should not be the subject of the instant sealing motions, with Amersham articulating one caveat. Specifically, Amersham outlined a need to seal any Amersham confidential information, such as cost and profit information, contained within the third party documents pursuant to the above mentioned sealing motions regarding such information. The Court understands Amersham's concerns and agrees that any information contained in third party documents which would fall under a category of documents to be sealed as discussed herein, shall be sealed pursuant to the terms of this Opinion. The Court also notes that Bracco has indicated that neither Wiswall nor Harrison would be seeking to seal their respective information. Therefore, Amersham's Motion to Seal Third Party documents is DENIED in accordance with the terms of this Opinion.

**III. Conclusion**

The Court concludes that both parties violated the Rules of the Court by filing redacted versions of their motions on the docket, however they have effectively narrowed the materials to be sealed. The Court notes that any Motion to Seal granted herein shall only apply to submissions

attached to the parties' numerous pretrial motions, and shall not apply to any materials used in open court during trial.  For the aforementioned reasons, the Court will GRANT in part and DENY in part the numerous pending Motions to Seal.  An appropriate form of Order shall be entered.


            *s/  Tonianne J. Bongiovanni*
      **HONORABLE TONIANNE J. BONGIOVANNI**
      **UNITED STATES MAGISTRATE JUDGE**


Dated:   July 18, 2007

19